IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DYLAN B. DAVIS, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF, AND ON BEHALF OF, THE ESTATE OF JAMES DEAN DAVIS AND JAMES DEAN DAVIS' HEIR-AT-LAW, AND ON BEHALF OF PEGGY HEBERT, *Plaintiff*, vs. LA SALLE COUNTY, TEXAS, BEATRICE MARIE HERNANDEZ, YVETTE MARIE MARTINEZ, FRANCISCA G. GARZA, ANA MARIA OLIVAREZ, SARAH ELIZABETH MURRAY, DOROTHY MARIE RAMIREZ, *Defendants*. | § § § § § § § § § § § § § § § § § § § § | 5-19-CV-00746-DAE-RBF |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns the Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendant La Salle County, Texas and individual Defendants Beatrice Marie Hernandez, Yvette Marie Martinez, Francisca G. Garza, Ana Maria Olivarez, Sarah Elizabeth Murray, and Dorothy Marie Ramirez. *See* Dkt. No. 47. The case was automatically referred pursuant to 28 U.S.C. § 636(b) and the docket management order entered

on September 29, 2017, in the San Antonio Division of the Western District of Texas.[1] Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, Defendants' Motion to Dismiss, Dkt. No. 47, should be **DENIED**. Plaintiff has plausibly alleged a claim for liability against La Salle County. Plaintiff has likewise plausibly alleged that Defendants proximately caused his father's death. Although Plaintiff has failed to state a viable claim under the Americans with Disabilities Act and Rehabilitation Act, he should get an opportunity to amend his complaint to remedy the pleading deficiencies discussed herein. Any such amended complaint, however, should also address the basis for Plaintiff's belief that he has standing to assert individual claims on behalf of decedent's mother Peggy Hebert. It should also aim to better comply with Rule 8(a)'s requirement that a complaint contain a "short and plain statement" of the claims for relief.

## Factual and Procedural Background

This denial-of-medical-care case brought by Plaintiff Dylan Davis seeks damages for the death of Plaintiff's father James Dean Davis, which occurred while James Davis was a pretrial detainee at the La Salle County Jail. Plaintiff Dylan Davis alleges that on or about 2:00 p.m. on July 31, 2017, James Davis—a known drug addict and alcoholic—was arrested and transported to the La Salle County Jail for a charge of theft. *See* Amend. Compl. ¶¶ 15, 20-21. The live Complaint alleges that at the time of his arrest and arrival at the jail, James Davis was visibly "ill to the point that he would die without medical treatment." *See id.* ¶ 18. Nevertheless, it is alleged, La Salle County jailers, Defendants Sergeant Yvette Martinez and Beatrice Hernandez,

---

[1] Although the September 29, 2017 Docket Management Order was subsequently superseded by the October 8, 2019 Docket Management Order of Cases Involving Applications to Proceed In Forma Pauperis for the San Antonio Division, the referral of this case occurred prior to the Order's issuance, and the District Court hasn't withdrawn the referral. Accordingly, this case remains referred for all pretrial purposes.

didn't properly screen Davis for medical and mental impairments, as was required by both La Salle County policy and the Texas Commission on Jail Standards ("TCJS"). *See id.* ¶¶ 17, 120. Had they done so, the Complaint alleges, Martinez and Hernandez would've realized Davis needed immediate medical assistance at a separate facility. *Id.* ¶ 19. Instead, Davis was placed in a holding cell, and Jail Administrator Dorothy Ramirez simply made Davis a sandwich to prevent him from "pass[ing] out." *Id.* ¶¶ 26, 29, 34.

From approximately 2:34 pm to 6:13 am on August 1, 2017, the Complaint alleges, each of the individual Defendants heard Davis moaning and screaming in pain from inside his holding cell. *See id.* ¶¶ 26, 34, 90, 97. Beginning at approximately 5:22 pm on July 31 and continuing throughout the next morning, Davis could be heard yelling for help and requesting an ambulance and to see a doctor. *See id.* ¶¶ 26, 32, 34, 52-53. Davis could also be seen vomiting in his holding cell, according to the Complaint, and his fellow prisoners even advised the jail staff on several occasions that Davis needed medical assistance. *See id.* ¶¶ 31, 43 78, 95, 97-98, 108.

Based on all of the above, Plaintiff contends Defendants either knew or should have known Davis was in severe distress and needed to go to a local hospital for immediate medical attention. *See id.* ¶¶ 19, 30-35, 44, 47-49, 52-53, 69, 78, 89, 92, 100. Rather than doing so, Plaintiff contends, Defendants ignored the physical manifestations of Davis's illness, ignored his repeated pleas for help, advising Davis that he simply needed to "sweat out what [he] ha[d]"; they allegedly even made fun of Davis's drug withdrawal. *See id.* Thus, according to the live Complaint, Defendants were deliberately indifferent to Davis's serious medical needs and acted in an objectively unreasonable manner. At approximately 6:30 am on August 1, 2017, Davis was discovered unresponsive. *See id.* ¶ 114. EMS personnel arrived at the scene a few minutes later

but by that point it was too late. Davis was pronounced dead at approximately 6:50 am due to a methamphetamine overdose. *See id.* ¶¶ 24, 26, 122.

Plaintiff Dylan Davis initiated this action on June 25, 2019, against Defendant La Salle County and 6 individual jailers who worked at the La Salle County Jail on the dates in question. Plaintiff brings claims via § 1983 against Defendants for violations of the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. Plaintiff asserts these claims on his own behalf, as executor of his father's estate, and on behalf of James Dean Davis's mother and heir, Peggy Hebert. Plaintiff seeks damages for pain and anguish, medical and funeral expenses, and exemplary damages under § 1983, as well as pursuant to Texas's wrongful-death and survival statutes. *See id.* ¶ 193 (citing Tex. Civ. Prac. & Rem. Code § 71.002 and Tex. Civ. Prac. & Rem. Code § 71.021).

Defendants move to dismiss on the grounds that Plaintiff failed to plead sufficient facts to establish municipal liability or that Defendants proximately caused Davis's death. Defendants further allege that Plaintiff hasn't pled a cognizable claim for violation of the ADA or Rehabilitation Act.

**Legal Standards**

In reviewing a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). But a court need "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Defendants' motion purports to provide a "Relevant

Background and Summary" containing certain alleged facts. But it does so without citation to Plaintiff's Amended Complaint and in contradiction of facts as pled by Plaintiff. While Defendants' version of events might eventually be supported by the evidence, it also might not. At this juncture, the Court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## Analysis

Taking the allegations in the live Complaint as true, Plaintiff has alleged facts sufficient to survive La Salle County's Rule 12(b)(6) arguments on municipal liability and proximate cause. While Plaintiff's claims under the ADA and Rehabilitation Act aren't adequately pled, Plaintiff should be afforded an opportunity to cure the pleading deficiencies.

A.   *Municipal Liability.* To state a claim upon which relief may be granted for municipal liability against a local government entity, like La Salle County, Plaintiff must allege facts that, if taken as true, reflect that an official custom, policy, or practice was the "moving

force" behind the alleged constitutional violations. *E.g.*, *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Thus, "'a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (quoting *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978)) (emphasis in original). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations," but may also be evidenced by a custom that is "'a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1983) (en banc)).

Here, Plaintiff has identified a number of county policies, practices, or customs that allegedly were the moving force behind James Davis's death, including:

- delaying or never booking certain people into its jail after intake if such people are under the influence of drugs and/or alcohol, and failing to complete associated screening forms upon intake;

- failing to train and supervise its jail employees;

- leaving individual jailers with the unilateral decision as to when they believe a detainee should receive healthcare;

- failing to document detainee medical symptoms and requests for medical assistance;

- failing to observe inmates at minimum intervals required by the TCJS, and instead making false observation entries to cover up the fact that prisoners such as Mr. Davis were not being observed in accordance with jail standards and/or TCJS standards, and re-writing observations if they exceeded 30 minutes;

- deliberate indifference and disregard of the serious medical and mental-health needs of inmates;

- inappropriately dealing with prisoners and/or choosing to maintain an unsafe jail;

- failing to require the jail administrator to have a jailer's license;

- failing to implement any policy whatsoever regarding prisoners in its jail who were detoxing from, and/or were under serious effects of, alcohol and/or drugs.

*See* Pl. Resp. at 5-6 (citing paragraphs in the Amended Complaint).

To survive La Salle County's motion to dismiss on municipal liability, Plaintiff needs to plausibly plead a that a policy was the moving force behind the denial of medical care. Plaintiff pleads that although La Salle County had a policy of requiring its jailers to conduct observations of inmates in holding cells every 30 minutes, jailers in practice didn't timely check in on the inmates. *See* Amend. Compl. ¶¶ 62-67, 72. Instead, according to Plaintiff, La Salle County jailers were often too busy and therefore would falsify their observation logs after the fact to pretend to comply with this policy. *See id.* This is enough for Plaintiff's municipal-liability claim to survive La Salle County's motion to dismiss. Whether and to what extent the other alleged policies, practices, or customs alleged or invoked could also support a claim is a topic that need not be addressed at this time. But no claim could or should go forward, in my view, if premised on an alleged policy, practice, or custom that is not tied to the harm complained of here. The lack of a license, for example, does not appear capable of supporting a claim. But this matter can be further clarified as the case proceeds, including through an amended complaint.

B. *Causation*. Defendants' argument that Plaintiff's claims fail for lack of causation is insufficient at this stage in the litigation. To ultimately prevail on a § 1983 claim for deprivation of medical care in violation of the Fourteenth Amendment, a plaintiff must show a denial of care and that this denial amounted to "deliberate indifference to serious medical needs." *Lee v. Lucas*, 66 F.3d 322 (5th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). In addition, a § 1983 plaintiff may only recover compensatory damages where he proves

that a defendant's actions (or in this case, inactions) proximately caused his legal injuries. *See Nettles v. Griffith*, 883 F. Supp. 136, 145 (E.D. Tex. 1995); *Richard v. City of Harahan*, 6 F. Supp. 2d 565, 575 (E.D. La. 1998). Further, where—as is the case here—a § 1983 plaintiff seeks to recover wrongful-death damages under Texas's Wrongful Death Act, the plaintiff must prove the causal link between the defendant's unconstitutional acts or omissions and the death of the victim. *See Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264 (5th Cir. 2016). That is, to recover damages under Texas's wrongful-death statute, Plaintiff must demonstrate that Defendants' wrongful actions more likely than not caused Davis's death—not just that they reduced Davis's chance of survival. *See id.* at 264-5. But at this stage, Plaintiff's burden is one of pleading, not proof; he must plead facts that, if true, support a claim for relief.

Here, Plaintiff has pled that Defendants were deliberately indifferent to Davis's need for medical care because they ignored Davis's repeated moans of pain and cries for help, and even mocked his withdrawal. Taking those allegations as true, they satisfy Plaintiff's burden at this stage in the case. *See, e.g.*, *Loosier v. Unknown Medical Doctor*, 435 Fed. App'x 302, 306-07 (5th Cir. 2010) (prisoner stated a deliberate-indifference claim where he alleged medical staff ignored pleas for help after he began choking on his own vomit); *United States v. Gonzales*, 436 F.3d 560, 573-75 (5th Cir. 2006), *abrogated on other grounds as recognized in United States v. Garcia-Martines*, 624 Fed. App'x 874, 879 n.12 (5th Cir. 2015) (sufficient evidence of deliberate indifference where officers failed to seek medical assistance for pretrial detainee who was lying on the ground with a broken neck, "foaming at the mouth," and begging for help).

According to Defendants, this alleged deliberate indifference didn't proximately cause Davis's death because at the time of his arrest Davis had already overdosed on methamphetamine. This argument conflates Plaintiff's trial burden with his burden to plead a

plausible claim for relief. Here, Plaintiff pleads that life-saving treatment was available at several hospitals in the area and had this emergency medical treatment been provided, Davis would've lived. *See* Amend. Compl. ¶¶ 129, 131. Whether the evidence ultimately supports this allegation is an issue for later resolution. Such allegations are sufficient at the pleading stage.

      C.      *ADA and Rehabilitation Act Claims*.  At this time, however, Plaintiff hasn't stated a viable claim for relief under either the ADA or Rehabilitation Act. But he should get a chance to file an amended complaint.

Both the ADA and Rehabilitation Act prohibit a "qualified individual with a disability" from, by reason of such disability, "be[ing] excluded from participation in or be[ing] denied the benefits of the services, programs, or activities of a public entity, or be[ing] subjected to discrimination by any such entity." 42 U.S.C. § 12132; 29 U.S.C. § 794(a). To state a claim under either act, Plaintiff must allege that (1) Davis was a qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity; and (3) that the exclusion, denial, or discrimination was because of his disability. *See Moran v. Summers*, No. A-15-CA-00769-SS, 2017 WL 1378406, at *8 (W.D. Tex. Apr. 10, 2017) (citing *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997)).[2] Further, to recover compensatory damages under either statute, Plaintiff must show that La Salle County intentionally discriminated against Davis. *See id.* (citing *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). Here, Plaintiff asserts that Davis was either disabled or regarded as disabled and that by denying him medical care, La Salle County failed to accommodate his

---

[2] Because the ADA expressly provides "[t]he remedies, procedures and rights" available under the RA are also accessible under the ADA, "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); *see also D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court has equated liability standards under § 504 [of the Rehabilitation Act] and the ADA, we evaluate D.A.'s claims under the statutes together.").

disability. But Plaintiff doesn't identify Davis's alleged disability or explain what accommodation should've been provided to permit Davis access to appropriate medical care.

In response to Defendants' motion to dismiss, Plaintiff argues that at the time of the events in question, Davis was unable to stand, eat, sleep, or care for himself and these are all limitations on major life functions that require accommodation pursuant to the ADA. *See* Pl. Res. at 17. But an individual is not disabled or regarded as disabled where the impairment is transitory, *i.e.*, it has an actual or expected duration of 6 months or less. *See Mesa v. City of San Antonio by & through City Pub. Serv. Bd.*, No. SA-17-CV-654-XR, 2018 WL 3946549, at *12 (W.D. Tex. Aug. 16, 2018) (citing 42 U.S.C. § 12102(3)(B)). Accordingly, Davis's withdrawal is not a good candidate for a disability for purposes of Plaintiff's ADA and Rehabilitation Act claims. Plaintiff, however, also pleads that Davis is a known drug addict who was HIV positive. *See* Amend. Compl. ¶¶ 21, 126. Thus, Davis could perhaps be considered a qualified person with a disability, or one regarded as such to the extent Plaintiff were to plead that Davis's addiction or HIV-positive status either substantially limited one of or more of his major life activities or caused him to be regarded as such. *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 859-60 (5th Cir. 1999) (that a person is perceived to be a drug addict does not necessarily mean the person is disabled under the ADA); *United States v. Morvant*, 898 F. Supp. 1157, 1161 (E.D. La. 1995) (AIDS/HIV-positive are both disabilities under the ADA). Such allegations, however, are absent from Plaintiff's live Complaint.

Plaintiff's Complaint also fails to plead that La Salle County discriminated against Davis because of his disability. There are two ways a disabled inmate can show denial of the benefits of services, programs, or activities, or otherwise show discrimination because of a disability in violation of the ADA and Rehabilitation Act. *Arce v. Louisiana*, 226 F.Supp.3d 643, 650 (E.D.

10

La. 2016). He can either show disparate treatment or a failure to accommodate. *Id*. at 650-1. Plaintiff makes the conclusory allegation that La Salle County denied Davis a reasonable accommodation. But nowhere in his Complaint does Plaintiff explain what accommodation Defendants should've provided to permit Davis "meaningful access" to emergency medical treatment. *See Alexander v. Choate*, 469 U.S. 287, 310 (1985) (explaining when an accommodation is reasonable); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."); *Cf. Baker v. TDCJ-CID*, No. 5:15-CV-202-BQ, 2017 WL 11467827, at *6 (N.D. Tex. Mar. 9, 2017), *report and recommendation adopted as modified*, No. 5:15-CV-202-C, 2017 WL 11467813 (N.D. Tex. Apr. 25, 2017) (inmate properly pled ADA and Rehabilitation Act claims where he alleged TDJC failed to provide additional time to eat to accommodate physical ailments associated with his prior surgery). Even assuming for purposes of this Report and Recommendation that medical treatment could be an accommodation under these circumstances, Plaintiff hasn't pled that the denial of medical care was *because of* Davis's drug addiction and/or HIV status. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (discrimination must be "by reason of [plaintiff's] disability").

For all these reasons, at this time Plaintiff hasn't pled a viable claim for relief under either the ADA or Rehabilitation Act.

D.     *Repleading and Standing Issues*. At the conclusion of his Response, Plaintiff states "in the unlikely event the Court concludes that Plaintiff's Amended Complaint fails to state a claim for relief, Plaintiff requests the opportunity to amend to correct any such deficiencies." Pl. Resp. at 19. But Plaintiff doesn't address how he would remedy the deficiencies with respect to his ADA and Rehabilitation Act claims and, in fact, at the August 23

11

Initial Pretrial Conference, counsel for Plaintiff expressly declined the opportunity to amend his complaint unless ordered to do so. Although Plaintiff later sought and obtained leave to amend his complaint to purportedly "clarify[] a few issues,"[3] the Amended Complaint fails to remedy or even address the aforementioned pleading deficiencies, even though Defendants previously raised these issues in their first motion to dismiss.[4] Accordingly, Plaintiff's ADA and Rehabilitation Act claims could be dismissed with prejudice particularly at this late juncture in the case.[5] Nevertheless, I recommend that the District Court afforded Plaintiff one final opportunity to file an amended complaint that addresses the above-referenced pleading deficiencies.

Any such amended complaint, however, should also address the basis for Plaintiff's belief that he has standing to assert individual claims on behalf of Davis's mother.[6] This issue was raised by Defendant at the Initial Pretrial Conference, and I previously directed Plaintiff to file a notice addressing it. To date, however, no such notice has been provided. Further, in the interest of judicial efficiency and to provide Defendants better notice of the claims asserted here, Plaintiff should endeavor to draft an amended complaint that better complies with Rule 8(a)'s requirement that a pleading contain a "short and plain statement" of the claims for relief. Here,

---

[3] *See* Dkt. No. 44; Feb. 14, 2020 text order.

[4] *See* Dkt. No. 21.

[5] *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) (finding no abuse of discretion in the district court's denial of leave to amend when the plaintiffs "almost as an afterthought . . . tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss"; they didn't demonstrate how they would replead or cure the pleading defects previously raised by defendants or proffer a proposed amended complaint).

[6] *See Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. 42 U.S.C. § 1988(a). Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.").

Plaintiff has filed a 100-page complaint, which consists of a disjointed account of witness statements and a jail investigation. Moreover, as mentioned above, many of the alleged policies and practices that form the basis of Plaintiff's municipal liability claim either lack a causal link to the alleged harm at issue or are general legal standards untethered to any of the supporting facts. Accordingly, this case could surely benefit from clearer and more concise pleadings.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss, Dkt. No. 21, be **DENIED**. Plaintiff, however, should be ordered to file an amended complaint— within 21 days— that: (1) addresses the pleading deficiencies with respect to his claims under the Americans with Disabilities Act and Rehabilitation Act; (2) addresses his standing to assert individual claims on behalf of the decedent's mother, Peggy Hebert; and (3) better complies with Rule 8(a)'s instruction to provide a "short and plain statement" of the claims for relief. Plaintiff, however, should be advised not to expect further leave to amend in response to a motion to dismiss.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or

recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 11th day of June, 2020.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE